

**NON-COMPETITION, CONFIDENTIALITY**
**AND PROPRIETARY RIGHTS AGREEMENT**

This Agreement is made and entered into as of **December 9, 2004**, by and between **John Sachs** (the "**Employee**") and Forsythe Technology, Inc. (the "**Company**"). The Company, together with its subsidiaries, affiliates or partners, including, without limitation, Forsythe Solutions Group, Inc. and Forsythe/McArthur Associates, Inc. are sometimes collectively referred to as the "**Affiliated Group.**"

RECITALS

**WHEREAS**, Employee desires employment with the Company, and as a condition of Employee's employment, the Company is requiring Employee to enter into this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and Employee hereby agree as follows:

AGREEMENT

1. NON-COMPETITION AND RELATED COVENANTS. During Employee's employment with the Company and for a period of 12-months thereafter (regardless of whether Employee was terminated for cause or not), without the express, prior written consent of the Company, Employee shall not engage in any of the conduct described in subsections (a)-(d) below, either directly or indirectly, individually or as an employee, contractor, consultant, partner, member, manager, officer, director or stockholder (other than as a stockholder of less than 5% of the equities of a publicly traded corporation) or in any other capacity for any person, firm, partnership, limited liability company or corporation:

(a) perform duties within the United States as or for a competitor of the Affiliated Group (i) which are the same or substantially similar to the duties performed by the Employee at any time during the 12-month period preceding Employee's termination or (ii) which involve the use of any Confidential Information (as defined below) which the Employee has received, obtained or acquired during, or as a consequence of, his/her employment with the Company;

(b) perform duties for (i) any current customer of the Affiliated Group (A) that Employee provided direct services to or (B) about which, by the nature of Employee's duties with the Company, Employee possesses significant information regarding such customer's operations or relationship with the Company or any other member of the Affiliated Group or (ii) any prospective customer of the Affiliated Group with which any member of the Affiliated Group was in active business discussions or negotiations at any time during the 6-month period preceding Employee's termination about which, by the nature of Employee's duties with the Company, Employee possesses significant information regarding such customer's operations or proposed relationship with such member of the Affiliated Group;

(c) participate in the inducement of or otherwise encourage any employees, customers or vendors of any member the Affiliated Group to breach, modify or terminate any agreement or relationship that they have with any member of the Affiliated Group;

(d) participate voluntarily with or provide assistance or information to any person or entity that is involved in a potential or existing business or legal dispute with any member of the Affiliated Group including, but not limited, to litigation, except as may be required by law. In the event Employee receives a complaint or subpoena or other legal process relating to Employee's employment with the Company, Employee, within seven days of receipt and prior to Employee's response, shall give written notice to the Company as provided in Section 6.7 herein; or

(e) solicit, seek or secure employment with any customer of the Affiliated Group (i) that Employee provided direct services to during the year preceding the termination of Employee's employment with the Company or (ii) about which, by the nature of Employee's duties with the Company, Employee possesses significant information regarding such customer's operations or relationship with such member of the Affiliated Group.

2 NON-DISCLOSURE OF CONFIDENTIAL INFORMATION.

(a) Employee will not at any time during his/her employment with the Company and for a period of 2 years thereafter (other than as may be required or appropriate directly in connection with the performance by him of his duties as an employee of the Company), directly or indirectly, use, communicate, disclose or disseminate any Confidential Information (as defined below) in any manner whatsoever (except as may be required under legal process by subpoena or other court order). In the event disclosure of any Confidential Information is required of Employee pursuant to the requirements of a government agency, regulation, judicial order or by operation of law, Employee, within seven days of the request to make such disclosure, and prior to Employee's response, shall give written notice to the Company as provided in Section 6.7 herein.

(b) For purposes of this Agreement, "**Confidential Information**" shall mean any and all information (oral or written), not generally known or available to the trade or industry without restriction, relating to the Company, any other member of the Affiliated Group or any person controlling, controlled by, or under common control with the Company or any other member of the Affiliated Group or any of its activities, including, but not limited to, information relating to: technology, engineering, research, and/or development activities and information; processes, methods personnel; data processing (including, but not limited to, software, programming design and development materials, documentation, and hardware and data base information); financial information; products; identity and description of materials and services used; purchasing; costs and pricing; customers and prospects; advertising, promotion and marketing; as well as information provided by any third party to the Company or any other member of the Affiliated Group.

3. PROPRIETARY RIGHTS; ASSIGNMENT OF INVENTIONS.

(a) All discoveries, designs, improvements, ideas, innovations, and inventions, whether patentable or not, relating to (or suggested by or resulting from) products, services, or other technology of the Company or relating to (or suggested by or resulting from) methods or processes used or usable in connection with the business of the Company that may be conceived, developed, or made by Employee during his employment with the Company (herein "**Inventions**"), either solely or jointly with others, will automatically become the sole property of the Company. Employee will immediately disclose to the Company all such Inventions.

(b) Employee, without additional compensation, will execute all assignments and other documents deemed necessary by the Company to perfect the Company's property rights, title and interest in all Inventions.

(c) The obligations of Section 3 will continue beyond the termination of Employee's employment with respect to Inventions conceived, developed, or made by Employee during Employee's employment with the Company. The provisions of Section 3, however, will not apply to any Invention(s) for which no equipment supplies, facility, or trade secret information of the Company is used by Employee and which is developed entirely on Employee's own time, unless (a) such Invention(s) relates (i) to the business of the Company or (ii) to the Company's actual or demonstrably anticipated research or development or (b) such Invention(s) results from work performed by Employee for the Company.

4. REMEDIES. The Company and Employee hereby agree that it is impossible to measure solely in money the damages, which will accrue to the Company by reason of Employee's failure to observe any of his obligations under this Agreement. Therefore, if the Company shall institute any action or proceeding to enforce such obligations or provisions, Employee hereby waives the claim or defense that there is an adequate remedy at law and agrees in any such action or proceeding not to interpose the claim or defense that such remedy exists at law. Without limiting any other remedies that may be available to the Company, Employee hereby specifically affirms the appropriateness of injunctive or other equitable relief in any such action. Any costs and expenses (including reasonable attorneys' fees and costs) incurred by the Company in successfully enforcing any provision of this Agreement shall be borne by Employee.

5. COVENANTS UPON TERMINATION OF EMPLOYMENT.

(a) Upon the termination of Employee's employment with the Company for any reason, Employee will promptly deliver to a designated Company representative all property of the Company in possession of Employee and all writings, records, data, memorandum, contracts, orders, sales literature, price lists, client lists, data processing materials, and other documents whether or not obtained from the Company, which pertain to or were used by Employee in connection with his employment by the Company, including, but not limited to, Confidential Information.

(b) Upon the termination of Employee's employment with the Company for any reason, Employee will reimburse the Company for the expense of any education and training provided to Employee in accordance with the terms of the Company's policies, as they may be amended from time to time.

6. GENERAL PROVISIONS

6.1 Partial Invalidity. Wherever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but in case any one or more of the provisions contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be modified, restricted, or omitted to the extent, but only to the extent, of such invalidity, illegality or unenforceability to make this Agreement enforceable, without invalidating the remainder of such provision or provisions or any other provisions of this Agreement, unless such a construction would be unreasonable. If any provision is held invalid or unenforceable with respect to particular circumstances, it nevertheless shall remain in full force and effect in all other circumstances.

6.2 Reasonable Limitations. The parties hereto stipulate and agree that each of the terms of this Agreement including, but not limited to, the scope of the activities prohibited and the time limitation is reasonable. The parties further stipulate and agree that in the event a court determines contrary to the agreement of the parties herein that any of the terms of this Agreement are unreasonable or contrary to public policy, or invalid or unenforceable for any reason in fact, law, or equity, then the court shall limit the application of any such provision or term or modify any provision or term to that which it finds reasonable, valid, or enforceable and shall enforce this Agreement as so limited or modified.

6.3 Governing Law. This Agreement shall be governed and construed in accordance with the internal laws (as opposed to the conflicts of law provisions) of Illinois. The parties agree that venue will lie solely with federal or state courts located in Cook County, Illinois and submit to the jurisdiction of federal or state courts located in Cook County, Illinois.

6.4 Successors and Assigns. This Agreement will inure to the benefit of, may be assigned and will be binding upon the successors and assigns of the Company.

6.5 Waiver. Any term or provision of this Agreement may be waived, or the party may extend the time for its performance, or parties entitled to the benefit thereof. Any such waiver shall be validly and sufficiently authorized for the purposes of this Agreement if, as to any party, an authorized representative of such party authorizes it in writing. The failure of any party hereto to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, nor in any way to affect the validity of this Agreement or any part hereof or the right of any party thereafter to enforce each and every such provision. No waiver of any breach of this Agreement shall be held to constitute a waiver of any other or subsequent breach.

6.6 Titles. Title of the sections herein are used for convenience only and shall not be used for interpretation or construction of any word, clause, section, or provisions of this Agreement.

6.7 Notices. Any notices to be given must be written and delivered via either mail, registered or certified, postage prepaid, with return receipt requested or overnight courier. Notices shall be addressed to the respective addresses shown below. Either party may change its address for notice by giving notice in accordance with the terms of this Agreement.

If to Employee:

John Sachs
1450 Estate Avenue 1311
Charlotte, NC 28209

If to the Company:

Forsythe Technology, Inc.
7770Frontage Road
Skokie, Illinois 60077
Attention: Vice-President of Human Resources

with a copy to:

Ungaretti & Harris
3500 Three First National Plaza
Chicago, IL 60602
Attention: James T. Easterling

6.8 Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but which together shall constitute one and the same Agreement.



6.9 Entire Agreement. This Agreement contains the entire understanding of the parties hereto with regard to the subject matter contained herein, and supersedes all prior agreements, understandings or letters of intent between the parties hereto. This Agreement shall not be amended, modified or supplemented except by a written instrument signed by each of the parties hereto.

6.10 Not an Agreement of Employment. This Agreement does not create an employment contract. Employee acknowledges and agrees that his/her employment is on an at-will basis, and such employment may be terminated by either the Company or Employee at any time.

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the day and year first written above.

FORSYTHE TECHNOLOGY, INC.

By: [signature]

Name: **Julie Fusco**

Its: **Vice President of Human Resources**

EMPLOYEE: **John Sachs**

[signature]

*Print Your Name*